UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL NO. 4:19-CR-0207-2 |
| | ) | |
| | ) | (BRANN, C.J.) |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| DAMONICO L. HENDERSON, | ) | |
| Defendant | ) | |

MEMORANDUM OPINION
*Defendant Henderson's Fourth Bail Motion (Doc. 223)*

I.  INTRODUCTION

After over forty months in pre-trial detention Damonico L. Henderson ("Henderson") once again seeks bail, alleging that his continued detention violates due process.

On August 19, 2022, Henderson filed his Fourth Bail Motion (Doc. 223) and a Brief in Support (Doc. 224). The Government filed a Brief in Opposition on September 2, 2022. (Doc. 228). On September 16, 2022, Henderson filed a Reply Brief. (Doc. 230).

After reviewing the motion, briefs, relevant evidence, and applicable law, for the reasons detailed in this opinion, Henderson's fourth bail motion (Doc. 223) will be DENIED. The sheer length of pre-trial detention makes this a close case that requires a detailed explanation.

## II.    PROCEDURAL HISTORY

On June 17, 2019, Henderson was arrested at his home in Ohio on a criminal complaint. He was brought before a Magistrate Judge in the Northern District of Ohio the same day, and was committed to the Middle District of Pennsylvania for further proceedings. (Doc. 35). Henderson requested that a detention hearing be held in the prosecuting district at a time set by that court. *Id.*

On June 27, 2019, Henderson was indicted on charges of conspiracy to manufacture, distribute, and possess with intent to distribute controlled substances and attempted possession with intent to distribute controlled substances in violation of 21 U.S.C. § 846.

On July 12, 2019, Henderson was arraigned in this district. Henderson pleaded not guilty and was ordered detained pending trial. (Doc. 39).

On August 20, 2019, Henderson filed his first bail motion. (Doc. 54). After full briefing and a bail hearing, the court deferred ruling on the motion until a home study of Henderson's residence in Ohio could be completed. (Doc. 59). Once the home study was received and reviewed, Henderson's first bail motion was denied. (Doc. 71).

On March 27, 2020, Henderson filed a second bail motion. (Doc. 76). In this motion, Henderson sought release due to COVID-19. After it was fully briefed, Henderson's motion was denied. (Doc. 88)

On October 13, 2020, Henderson filed a third bail motion. (Doc. 106). After full briefing and a bail hearing, Chief United States District Judge Matthew W. Brann denied Henderson's motion. (Doc. 126). Henderson appealed the order denying his third bail motion to the Third Circuit Court of Appeals. (Doc. 128). The District Court decision denying bail was affirmed. (Doc. 131).

On August 19, 2022, Henderson filed this fourth bail motion. (Doc. 223). Along with his motion, Henderson filed a brief in support. (Doc. 224). On September 2, 2022, the Government filed a brief in opposition. (Doc. 228). On September 16, 2022, Henderson filed a reply. (Doc. 230).

Henderson's trial was initially scheduled to take place on September 9, 2019. (Doc. 41). Henderson's trial has been continued twelve times. (Docs. 46, 68, 73, 75, 91, 98, 115, 123, 133, 146, 157, 222). Henderson concurred in most of these requests, which were sought to give the parties an opportunity to explore a non-trial disposition, and to review discovery materials. Trial is currently scheduled to begin on December 5, 2022. Next up on the docket is a two-day suppression hearing, currently scheduled to begin on November 15, 2022 (Doc. 235).

To date, Henderson has been in pre-trial detention, presumed innocent, for three years, four months, and seven days.

### III. LEGAL STANDARD

The eligibility of an accused for bail is governed by the Bail Reform Act. 18 U.S.C. § 3402 *et seq*. The Bail Reform Act requires that a pretrial defendant be released unless "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *United States v. Soriano Nunez*, 928 F.3d 240, 244 (3d Cir. 2015) (quoting 18 U.S.C. § 3142(e)(1)).

Once a defendant, like Henderson, has been ordered detained, he may move for revocation or amendment of that order. When reconsidering its initial order on detention, a court must consider the facts of the individual case. That consideration is guided by the factors set forth in the Bail Reform Act for the initial determination of pretrial detention, as well as certain other factors commonly referred to as the "*Accetturo*" factors, which include:

(1)  the gravity of the charges;

(2)  the degree to which the defendant poses a risk of flight or a danger to the community;

(3)  the strength of the Government's case on the merits;

(4)  the length of the pretrial detention that has already occurred;

(5)  the complexity of the case, and

(6)  whether either side has "added needlessly" to the complexity of the case through its litigation strategy.

*United States v. Accetturo*, 783 F.2d 382, 388 (3d Cir,. 1986).

IV.     **DISCUSSION**

    A.     **Gravity of the Charges**

Henderson does not dispute the seriousness of the charges against him in this case. As noted by the Government in its response, "the charges include a narcotics crime punishable by greater than 10 years," and there "is a presumption of detention." (Doc. 228, p. 8). Henderson's prior criminal convictions for Possession with Intent to Distribute Cocaine and Possession of a Firearm by a Felon were punishable by a range of up to 20 years' imprisonment for a drug offense and 10 years' imprisonment for the gun offense. His sentence on those offenses in 2009 was 33 months followed by three years of supervised release. (*See* N.D. Ohio Pretrial Services Report dated June 18, 2019). His present offense on the other hand is punishable by a <u>mandatory minimum</u> of 15 years' imprisonment with a <u>maximum of life</u>.

Accordingly, I find that this factor weighs in favor of continued detention.

    B.     **The Degree to Which Henderson Poses A Risk of Flight or a Danger to the Community**

When determining whether there are conditions that can assure a defendant's appearance at trial and the safety of the community, a judicial officer should consider the following factors set forth in 18 U.S.C. § 3142(g):

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or controlled substance, firearm, explosive, or destructive device;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including—

  (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug and alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

  (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing appeal, or completion of sentence for an offense under Federal, State or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. . . .

On this score, the court does not write on a blank slate. In connection with Henderson's prior motions I made the following relevant findings based on Henderson's June 18, 2019 Pretrial Service Report, a Home Study Report from the Northern District of Ohio, exhibits presented with Henderson's prior bail motions, and arguments of counsel:

1. The presumption of detention under the Bail Reform Act applies;

2. Damonico Henderson was involved as a regional leader in a conspiracy to distribute large amounts of controlled substances for over four years;

3. Henderson was under supervision in the Northern District of Ohio for at least a portion of the time he was participating in this conspiracy;

4. Henderson employed others to distribute large amounts of controlled substances in the Northern District of Ohio;

5. Henderson's wife was either a willing participant in his drug distribution or turned a blind eye to his illegal activities, making her an unsuitable third-party custodian or companion if he were granted bail;

6. The potential sentence in this case is so great that Henderson's appearance in the past while on bail is not a fair indicator of his likelihood of appearance in this case; and,

7. The strength of the government's case establishes that for over four years Henderson was a continuing threat to the safety of his community and the customers that consumed the drugs he distributed.

(Doc. 71, pp. 4-5).

Henderson does not challenge the court's prior evaluation of this factor in his supporting brief. The Government maintains that there "are no conditions or combination of conditions that can assure the appearance of Henderson at trial and the safety of the community," and that the "§ 3142(g) factors do not favor Henderson's release. (Doc. 228, pp. 8-10).

The prior factual findings quoted above regarding dangerousness still apply in the considering Henderson's fourth bail motion and that this factor weighs in favor of continued detention. In *United States v. Santiago-Pagan*,

the Honorable Christopher C. Conner, then Chief Judge of this Court, found that:

> Defendant's indictment for conspiracy, distribution, and possession of a large quantity of narcotics cuts strongly against his motion for release pending trial. The seriousness of the crimes alone, in the absence of significant countervailing considerations, allows the court to draw the inference that defendant will simply continue his alleged narcotics activity if released. (citing *United States v. Carter,* 916 F.Supp. 193, 195 (N.D.N.Y. 1996) & *United States v. Duncan,* 897 F.Supp. 688, 691 (N.D.N.Y. 1995)).

*U.S. v. Santiago-Pagan*, 2009 WL 1106814, at *7 (M.D.Pa 2009). *Cited with approval* by Judge Brann in *U.S. v. Thompson*, 2018 WL 447331 (M.D. PA 2018).

### C. The Strength of the Government's Case on The Merits

In his reply brief, Henderson argues that the Government's evidence against him is no longer as strong as it once was. He asserts that:

> (1) the only purported source of the historical drug trafficking—Mr. Bressi—is no longer a cooperating witness; (2) no seizure of any illegal drugs from Mr. Henderson or his residence—ever; (3) no evidence of monies exchanged between Bressi and Henderson; and (4) no evidence of any drug transactions by Mr. Henderson.

(Doc. 230, p. 4).

Nonetheless, the Government has proffered that Henderson is a high-level distributor of fentanyl. (Doc. 135). Based on this proffer, given in February 2021 in opposition to Henderson's third bail motion, along with the additional findings of fact below I conclude the Government's case against Henderson is strong.

**V.     ADDITIONAL FINDINGS OF FACT**

In response to the fourth Motion for Bail (Doc. 223) the court makes these additional findings of fact by clear and convincing evidence:

Based on the evidence proffered by the Government, Damonico Henderson is a high-level distributor of fentanyl. He has allegedly received and distributed hundreds of kilograms of fentanyl and fentanyl analogues since 2015 in Ohio. The evidence against him is strong and includes a video and audio recording of Henderson receiving 100 kilograms of a mixture or substance he believed contained carfentanil on June 15, 2019. (Doc. 65, p. 2)

Further evidence that Henderson was an established drug trafficker is shown by his lavish lifestyle in spite of his modest income as a restaurant hood cleaner. On a salary of approximately $1,800 per month he was able to support a wife who does not work in a home valued at $175,000 that contained nearly a half-million dollars of cash, jewelry and luxury vehicles at the time of his arrest. (Doc. 65, p. 3)

The government's Bill of Particulars (Doc. 70) specifying the items subject to the forfeiture provision of the Indictment, specifically paragraphs: 27 (2011 Lincoln automobile seized from Henderson); 28 (2019 Lincoln automobile seized from Henderson); 38 (residence at 353 Pemberton Drive, Elyria, Ohio owned by

Henderson); 39, 40, 41, & 42 (various handguns and ammunition seized at Henderson's residence) support the government's contention that Henderson was both living beyond his apparent means and engaging in criminal behavior. It is also notable that all three defendants in this indictment (including Henderson) are convicted felons and all three had guns and ammunition seized from their residences at the time of their arrest. Henderson's argument that the gun "belonged to his wife" and not him is unpersuasive.

### D. The Length of Pretrial Detention

The parties do not dispute that Henderson has been detained on these charges since June 17, 2019. Thus, Henderson has been detained pretrial for over forty months. The length of Henderson's detention weighs in favor of release. Length of detention alone is not the controlling factor. *See e.g.*, *United States v. Thompson*, No. 4:16-CR-19-19, 2018 WL 2341713 (M.D. Pa May 23, 2018) (finding that thirty-two months of pretrial detention is lengthy, but not impermissible and noting that 30-33 months without a conviction in a heroin trafficking case had been found permissible).

### E. Complexity of the Case & Whether the Government's Legal Strategy Has Delayed This Case

In his brief Henderson cites four cases where a court actually released a defendant on bail based on undue pre-trial delay: (1) *United States v. Gatto*, 750 F. Supp.664 (D.N.J. 1990); (2) *United States v. Vastola*, 652 F. Supp. 1446 (D.N.J.

1987); (3) *United States v. Ailmen*, 165 F.R.D. 571, 572-3 (N.D. Cal. 1996); and (4) *U.S. v. Gonzales Claudio*, 806 F.2d 334, 335 (2d Cir. 1986). (Doc. 224, pp. 7-8). Each of these cases, however, is distinguishable from this case on its facts. Each of those cases involved a significant delay attributed to the conduct of the government.

In *Gatto*, the court granted bail despite a finding of dangerousness. It is, however, distinguishable from this case because the trial delayed due to the government's actions. In *Gatto* the district court granted a motion to suppress evidence related to one of the major charges pending against the defendant, and the government appealed to the Third Circuit. While that appeal was pending, the district court scheduled the case for trial. On the eve of a trial expected to last for months the government filed a motion for an anonymous jury. The district court determined that a hearing on that motion would be needed. The district court also found that the government had not produced a witness for interview by defense counsel as previously ordered, did not have the transcripts of recorded conversations in final form for trial and only recently revealed to counsel that it possessed fifteen years of surveillance logs on the defendants. Based on the government's conduct, the district court released the defendant on bail, despite an earlier finding of dangerousness. That type of government conduct is not present in this case.

The second case Henderson cites, *Vastola,* is also distinguishable. In *Vastola,* the court released the defendant on bail after only three months of pretrial detention

where it estimated the trial would not occur until the defendant was in custody for over 18 months without trial. Although the court considered several factors, its primary concern was the cause of the delay, not its length. The court explained:

> The reasons for delay in the trial stem primarily from the volume of tape recordings of wire taps (estimated at 3000–3800 hours) and documentary evidence that defense counsel must review in order to prepare for pretrial motions and the trial itself. In addition an unspecified amount of videotape evidence must be reviewed. This case concerns 21 defendants, indicted on 117 counts under several statutes for illegal activities in both Maryland and New Jersey. It is clear that the lawyers will require an unusual amount of time for preparation. The court also notes that the government has encountered delays in providing the tapes and transcripts to defense counsel. The government first estimated its evidence to contain some 1000 hours of audio tape but at the December 12, 1986, hearing, defense counsel asserted without opposition by the government that there were some 3000–3800 hours of tape recordings. It also appears to the court that the government has not facilitated the review of the tapes by providing an index of the contents of the tapes.

*Vastola*, 652 F. Supp. at 1448. The court concluded "[t]he factors of the prospect of continued detention for up to 1 ½ years **combined with some governmental responsibility for the delay** in reaching trial, outweigh the risks of safety to the community and the burden on the government in minimizing that risk under conditions of release. *Id.* (emphasis added).

The third case Henderson cites, *Ailmen*, is also distinguishable. In *Ailmen*, the defendant was released on bond after over two years of pre-trial detention. However, the court noted:

> This is the second time the government has brought drug charges against Pius Ailemen. He was first indicted on drug-dealing counts in 1989. In a 1990 trial on those charges a jury acquitted him of the alleged drug offenses . . . . He was arrested again in 1993 . . . . All the counts against Ailemen except one were dismissed by the district court pursuant to a decision that trying Ailemen on *573 those counts would violate the Double Jeopardy Clause of the Fifth Amendment. This decision has been appealed by the government—and at the trial court level the government's case against Ailemen has been stayed pending resolution of the appeal. Another factor contributing to the length of the pretrial period, albeit less significantly, was slowness by the prosecution in turning over certain discovery.

*Ailemen*, 165 F.R.D. at 572-3.

Finally, Henderson cites *Gonzales Claudio*, where the Second Circuit said, "[t]his appeal presents the important issue of whether and under what circumstances the duration of the pretrial detention of a defendant denied bail because he is a risk to flee exceeds the limitations of the Due Process Clause of the Fifth Amendment." *Gonzales Claudio*, 806 F.2d at 335. Like the other three cases cited, this case involved egregious government caused delay. The Second Circuit described the government's actions as follows:

> Examining *342 the Government's share of responsibility for the pretrial delay, we note the following undisputed circumstances. The wiretapping was conducted over a two-year period from September 1983 until defendants' arrest on August 30, 1985. The Government began providing the defendants certified translations of audiotapes in December 1985, and the translation task was not completed until May 1986, nine months after the defendants were arrested and incarcerated. The translation of the seized documents, a task that could have begun at the time of the seizures on August 30, 1985, had not been completed within one year after detention began and has only recently been accomplished. The *existence* of the videotapes was not disclosed to the

defendants until June 1986, ten months after detention began. Obviously some interval of time is required for the defendants and their counsel to examine these materials, both for trial preparation and for making challenges to the admissibility of such materials.

The Government suggests that the delays occasioned by translations are attributable to the defendants since they have "insisted" on translation of all tapes and documents, not just those the Government intends to use at trial. Brief for Appellee at 49. We find this argument unconvincing. The defendants are in no position to "insist" on anything. They have filed motions requesting complete translations, and the District Court has granted these motions. The District Court evidently concluded that pertinent legal standards entitled the defendants to have the translations they sought. The Government could have substantially shortened the time the translation task has taken by devoting sufficient resources to complete the task expeditiously. Moreover, the need for translation of any Spanish-language materials arises from the Government's preference to indict the defendants in Connecticut, where it could have been anticipated that most of the defense counsel would speak only English. The defendants have sought to have the trial transferred to Puerto Rico, where Spanish-speaking lawyers would not need translations, but the Government has opposed a transfer.

The Government's delay in disclosing the existence of the videotapes is inexplicable, especially in light of the defendants' prompt filing of motions under Fed.R.Crim.P. 16. At argument we were advised that the existence of the videotapes was not known to the prosecutors in Connecticut until June 1986, at which time the defendants were promptly notified. However, the Government does not dispute that its Rule 16 obligations extend to materials in the possession of its investigative agents in Puerto Rico who conducted the videotaping, *see United States v. Scruggs,* 583 F.2d 238, 242 (5th Cir.1978).

Finally, we note that the process of producing materials discoverable under Rule 16 has not yet been completed, even now, more than fourteen months after detention began. The District Court's latest scheduling order, issued October 31, 1986, directs the Government to disclose by November 21, 1986, "such evidentiary material which it has in its possession and upon which it *is* conducting certain laboratory or

other examinations" (emphasis added). *See* Fed.R.Crim.P. 16(a)(1)(D) (production of results of physical examinations).

**We need not determine with precision the amount of pretrial delay attributable to the prosecution, nor assess the extent to which the Government may have been at fault in contributing to the delay. It suffices for present purposes to conclude that the Government, even if not deserving of blame, bears a responsibility for a portion of the delay significant enough to add considerable weight to the defendants' claim that the duration of detention has exceeded \*343 constitutional limits.**

*Gonzales Claudio*, 806 F.2d at 341–43 (emphasis added).

Unlike the four cases he cited, Henderson has not specifically alleged that any of the delay in bringing his case to trial is attributed to inexcusable government delay. His reply brief (Doc. 230, pp. 4-6) does touch on this issue but the brief is neither detailed nor persuasive.

### F. Balancing of Factors

In his brief, Henderson appears to suggest that the length of his detention alone should outweigh all other factors in this case. This suggestion is not persuasive.

Applying the six *Accetturo* factors to Henderson's motion, only the fourth factor—length of detention—supports his release. Given the strength of the other five factors, especially the danger Henderson poses to the community, release on bail is not required.

## VI. CONCLUSION

Based on the foregoing:

(1)   Henderson's request for Bail will be DENIED.

(2)   An appropriate order will be issued.

Date: October 24, 2022                              BY THE COURT

*s/William I. Arbuckle*
William I. Arbuckle
U.S. Magistrate Judge
