**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | | No. 4:19-CR-00207-02 |
| v. | | (Chief Judge Brann) |
| DAMONICO HENDERSON, | | |
| Defendant. | | |

**MEMORANDUM OPINION**

**FEBRUARY 28, 2023**

In November 2022, Magistrate Judge William I. Arbuckle denied Defendant Damonico Henderson's fourth motion for pretrial release. Henderson, who has been charged with conspiring to manufacture and distribute fentanyl and fentanyl analogues, asks this Court to reverse that ruling, arguing that the length of his pretrial detention—more than 45 months—violates his due process rights. Although this is an uncommonly long duration for pretrial detention, continued detention is warranted, as the offenses charged are serious, the Government's case is strong, and the risk of flight and danger to the community is high. Moreover, the recent delays in this case are attributable not to the Government, but to Henderson and his co-defendants. Accordingly, Henderson's motion is denied.

## I.    BACKGROUND

### A.    Factual Background[1]

In 2016, the Federal Bureau of Investigation launched an investigation into suspected drug trafficking being conducted near Lewisburg, Pennsylvania. Specifically, the FBI believed that Defendant Anthony Bressi was manufacturing a substantial amount of fentanyl and fentanyl analogues, such as carfentanil, out of a commercial building along Route 15 in East Buffalo Township, Union County, and then distributing the illicit narcotics to contacts in Philadelphia and Ohio.

As part of its investigation, FBI agents reviewed Bressi's bank and cell phone records, surveilled his properties, and monitored his movements. Relevant here, FBI agents observed two separate meetings in 2018 between Bressi and Henderson at a Perkins restaurant in Clarion, Pennsylvania. At the second meeting, which occurred on November 30, 2018, agents saw Henderson retrieve a bag from his car and then give the bag to Bressi. Afterwards, Bressi returned home and then deposited $33,000 into his bank account. For his part, Henderson was stopped by

---

[1]   The information detailed here comes from the factual record as detailed by the Government in its opposition to Henderson's fourth motion for bail. *See* Doc. 228 (Gov't Opp.) at 1–7. This account is consistent with the factual findings this Court made following the bail hearing held on January 21, 2021—findings this Court relied on when denying Henderson's third motion for bail. *See* Doc. 124 (Scheduling Order—Jan. 21, 2021, Bail Hearing); Doc. 126 (Brann, C.J., Order Denying Henderson's Third Bail Motion). As the Government notes, following Magistrate Judge Arbuckle's denial of Henderson's fourth bail motion, the only procedural development has been the two-day evidentiary hearing this Court held on the Defendants' pretrial motions in November 2022. *See* Doc. 258 (Nov. 15, 2022, Hearing Tr.); Doc. 259 (Nov. 16, 2022, Hearing Tr.). The evidence presented at that hearing accords with the facts recounted here.

the Pennsylvania State Police on his return to Ohio; he told the Troopers that he had been visiting his daughter in New York—a statement they knew to be false.

Six months later, the FBI executed a search warrant on Bressi and his commercial property. The FBI initiated the search while Bressi was on-site, in the middle of making a batch of carfentanil. Bressi then gave a lengthy videotaped statement to FBI agents in which he detailed his drug manufacturing activities and explained that the batch of carfentanil currently in production was destined for delivery to Defendant Terry Harris in Philadelphia and to Henderson, who resided in the greater Cleveland area.

Armed with this information as well as Bressi's continued cooperation, the FBI arranged to proceed with the deliveries to Harris and Henderson—albeit under its supervision and with a different, licit substance substituted for the carfentanil. On June 15, 2019, ten buckets containing 100 kilograms of the substituted substance (i.e., ten kilograms per bucket) were delivered to Henderson in Hermitage, Pennsylvania, near the Pennsylvania-Ohio border, approximately 90 minutes away from Henderson's home. The FBI recorded the transaction, capturing Henderson as he took possession of the buckets. The audio recording reveals Henderson repeatedly asking questions such as "this can be mixed with the other" and "my people still got some of the other."

Further, the FBI's review of Henderson's personal finances between 2015 and 2019 revealed notable discrepancies between his (and his wife's) stated

incomes and the assets they accumulated. According to the Government, Henderson's wife, Stephanie Coombs-Henderson, last reported wages in 2016; she earned $23,309 from Moran Foods, LLC. Henderson himself reported income of $23,420 in 2015; $22,910 in 2016 (plus $25,240 from Link for Success); $1,462 in 2017; and $25,240 in 2018. Notwithstanding their relatively modest incomes, Henderson and his wife deposited nearly $400,000 into various bank accounts between 2015 and 2019. And at the time of time of Henderson's arrest in 2019, the couple had at their home nearly $500,000 of cash, jewelry, and vehicles (six in total, including two Lincolns and a Mercedes).

### B.    Procedural History

On June 14, 2019, Henderson was arrested at his home in Ohio on a criminal complaint.[2] Two weeks later, a federal grand jury in the Middle District of Pennsylvania returned a four-count indictment against Henderson and his co-defendants, Bressi and Harris.[3] Henderson was charged on two counts: (1) conspiracy to manufacture, distribute, and possess with intent to distribute controlled substances; and (2) attempted possession with intent to distribute controlled substances.[4]

---

[2]   *See* Dkt. No. 19-MJ-00047, Doc. 1 (Complaint – SEALED).
[3]   Doc. 16 (Indictment).
[4]   *Id*. (Counts I & III).

Henderson was arraigned on July 12, 2019.[5] He pleaded not guilty,[6] and Magistrate Judge Arbuckle ordered him detained pending trial.[7]

To date, Henderson has filed four separate motions for bail.[8] Magistrate Judge Arbuckle, who presided over a bail hearing and reviewed a home study of Henderson's residence in Ohio, denied Henderson first two bail motions.[9] After a second bail hearing, this Court denied Henderson's third motion for bail.[10] Henderson appealed this Court's ruling,[11] and the United States Court of Appeals for the Third Circuit affirmed.[12]

Following his third bail motion—which was resolved on February 4, 2021— Henderson and his co-defendants sought and received four separate continuances.[13] The Defendants also filed eleven different pretrial motions,[14] which this Court

---

[5]  *See* Doc. 25 (Notice of Hearing – Initial Appearance & Arraignment).

[6]  Doc. 38 (Henderson Not Guilty Plea).

[7]  Doc. 39 (Initial Order of Detention).

[8]  *See* Doc. 54 (First Motion for Bail); Doc. 76 (Second Motion for Bail); Doc. 106 (Third Motion for Bail); Doc. 223 (Fourth Motion for Bail).

[9]  Doc. 71 (Arbuckle, M.J., Mem. Op. Denying Henderson's First Bail Motion); Doc. 88 (Arbuckle, M.J., Mem. Op. Denying Henderson's Second Bail Motion).

[10]  Doc. 126 (Brann, C.J., Order Denying Henderson's Third Bail Motion).

[11]  Doc. 128 (Notice of Appeal).

[12]  Doc. 131 (Third Circuit Affirmation).

[13]  *See* Doc. 133 (Feb. 8, 2021, Order to Continue); Doc. 146 (June 9, 2021, Order to Continue); Doc. 157 (Dec. 1, 2021, Order to Continue); Doc. 222 (Aug. 10, 2022, Order to Continue).

[14]  Doc. 150 (Bressi Mot. to Preclude Statements); Doc. 158 (Harris Mot. to Sever); Doc. 160 (Harris Mot. to Preclude Co-Conspirator Statements); Doc. 162 (Harris Mot. to Preclude Tape Recordings and Transcripts); Doc. 166 (Henderson Mot. to Suppress Prison Calls); Doc. 168 (Henderson Mot. to Suppress Physical Evid.); Doc. 170 (Henderson Mot. to Compel); Doc. 172 (Henderson Mot. to Sever); Doc. 186 (Bressi Mot. to Preclude Traffic Stop Evid.); Doc. 188 (Bressi Mot. to Suppress Trash Pull Evid.); Doc. 190 (Bressi Omnibus Mot.).

(acting on the Defendants' request) scheduled for a two-day evidentiary hearing on November 15 and 16, 2022.[15]

Prior to the hearing, Henderson filed his fourth motion for bail.[16] Magistrate Judge Arbuckle denied that motion on October 24, 2022.[17]

Before the Court now is Henderson's appeal of Magistrate Judge Arbuckle's October 2022 ruling.[18] That motion has been fully briefed,[19] and the evidentiary hearing on the Defendants' pretrial motions has been completed.[20] Accordingly, Henderson's motion appealing Magistrate Judge Arbuckle's denial of his fourth bail motion is now ripe for disposition.

## II.    LEGAL STANDARD

Following indictment, a court (typically by way of a magistrate judge) determines the defendant's eligibility for pretrial release by following the procedures outlined in the Bail Reform Act.[21] If a defendant is ordered detained, he may later move for revocation and amendment of that order.[22] District courts review magistrate judges' detention orders *de novo*.[23] Accordingly, although a district court should give "respectful consideration" to the magistrate judge's

---

[15]   Doc. 235 (Scheduling Order – Nov. 15, 2022, Suppression Hearing).
[16]   Doc. 223 (Fourth Motion for Bail).
[17]   Doc. 238 (Arbuckle, M.J., Mem. Op. Denying Henderson's Fourth Bail Motion).
[18]   *See* Doc. 244 (Mot. for Review and Reversal of Detention Order).
[19]   Doc. 245 (Henderson Br.); Doc. 257 (Gov't Opp.).
[20]   *See* Doc. 258 (Nov. 15, 2022, Hearing Tr.); Doc. 259 (Nov. 16, 2022, Hearing Tr.).
[21]   18 U.S.C. §§ 3402 *et seq.*
[22]   18 U.S.C. § 3145(b).
[23]   *United States v. Delker*, 757 F.2d 1390, 1394–95 (3d Cir. 1985).

findings,[24] it must ultimately decide the propriety of detention without deference to the magistrate judge's conclusion.[25]

## III.   ANALYSIS

Defendant Damonico Henderson has asked the Court to review and reverse the detention order Magistrate Judge Arbuckle issued in October 2022 when denying Henderson's fourth motion for bail.[26] In *United States v. Accetturo*, the Third Circuit outlined the process district courts should employ when considering a motion to revoke or amend a prior detention order based on an alleged violation of a defendant's due process rights.[27] Recognizing that "due process is a flexible concept," the Third Circuit declined to draw "arbitrary lines" for when defendants "adjudged to be flight risks or dangers to the community should be released pending trial," instructing that "due process judgments" should instead "be made on the facts of individual cases."[28]

To that end, the Third Circuit directs district courts to reevaluate "the factors relevant in the initial detention decision, such as the seriousness of the charges, the strength of the Government's proof that defendant poses a risk of flight or a danger to the community, and the strength of the Government's case on the merits."[29] That

---

[24]   *United States v. Traitz*, 807 F.2d 322, 325 (3d Cir. 1986).
[25]   *United States v. Fortna*, 769 F.2d 245, 249–50 (5th Cir. 1985)**.**
[26]   Doc. 244 (Mot. for Review and Reversal of Detention Order).
[27]   783 F.2d 382, 388 (3d Cir. 1986).
[28]   *Id.*
[29]   *Id.* (cleaned up).

reevaluation should be supplemented by the consideration of "such additional factors as the length of the detention that has followed, the complexity of the case, and whether the strategy of one side or the other has added needlessly to that complexity."[30]

Here, the Court first analyzes the factors that guided the initial detention ruling and then turns to the additional factors enumerated in *Accetturo*.

### A.    Factors Relevant to Initial Detention Ruling

In criminal cases like this one, where the charges include a narcotics crime punishable by more than ten years, there is a presumption of detention.[31] That said, a defendant can overcome the presumption if he can show that a condition or combination of conditions will reasonably assure his appearance as well as the safety of others and the community.[32] As discussed, a court assessing a defendant's eligibility for pretrial release must consider (1) the seriousness or gravity of the offenses charged, (2) the strength of the Government's case, and (3) the degree to which the defendant poses a risk of flight or danger to the community.[33] For Henderson, courts have repeatedly held that these factors weigh in favor of detention.[34] The bases for these rulings remain unchanged.

---

[30]  *Id.*

[31]  18 U.S.C. § 3142(e)(3)(A).

[32]  *Id.*

[33]  *Accetturo*, 783 F.2d at 388.

[34]  *See* Doc. 39 (Initial Order of Detention); Doc. 71 (Arbuckle, M.J., Mem. Op. Denying Henderson's First Bail Motion); Doc. 88 (Arbuckle, M.J., Mem. Op. Denying Henderson's Second Bail Motion); Doc. 126 (Brann, C.J., Order Denying Henderson's Third Bail Motion);

### 1.    Seriousness or Gravity of the Offense

In his October 2022 Memorandum Opinion denying Henderson's fourth request for bail, Magistrate Judge Arbuckle detailed the seriousness of the charges against Henderson by comparing the types of sentences available and anticipated guideline range of imprisonment for Henderson's prior offenses with those for the present offenses charged.[35] Specifically, Magistrate Judge Arbuckle noted that Henderson prior criminal convictions for Possession with Intent to Distribute Cocaine and Possession of a Firearm by a Felon were punishable by up to twenty years' and ten years' imprisonment, respectively, and that in 2009 he received a sentence on those offenses of 33 months followed by three years of supervised release.[36] Conversely, for the present offense, Henderson faces a mandatory minimum sentence of fifteen years' imprisonment with a maximum allowable sentence of life in prison.[37]

It is altogether unsurprising, then, that Henderson did not "dispute the seriousness of the charges against him" when litigating this issue before Magistrate Judge Arbuckle. Henderson likewise does not contest this factor here. Accordingly, this Court finds that the factor weighs in favor of continued detention.

---

Doc. 131 (Third Circuit Affirmation); Doc. 238 (Arbuckle, M.J., Mem. Op. Denying Henderson's Fourth Bail Motion).

[35]  Doc. 238 (Arbuckle, M.J., Mem. Op. Denying Henderson's Fourth Bail Motion) at 5.

[36]  *Id*.

[37]  *Id*.

## 2.    Strength of the Government's Case

In denying Henderson's prior petitions for pretrial release, Magistrate Judge Arbuckle consistently held that the Government's case against Henderson is strong.[38] Neither this Court nor the Third Circuit disputed Magistrate Judge Arbuckle's findings on this front.[39]

But, in a rather dramatic fashion, Henderson argues that in the years since these decisions, the Government's case against him has weakened considerably: "the landscape of the Government's case has taken a seismic plunge since that time."[40] According to Henderson, "the Government built its entire case around" Henderson's co-Defendant Anthony Bressi—the supposed "central architect" of the case against Henderson—but Bressi "is no longer a cooperating witness for the Government."[41] Henderson contends that Bressi was the "only source of the purported historical drug trafficking," and that that without him "in its pocket," the Government cannot substantiate its claims against Henderson.[42] This Court disagrees.

---

[38]  *See* Doc. 71 (Arbuckle, M.J., Mem. Op. Denying Henderson's First Bail Motion) at 2 (finding that the Government "showed by clear and convincing evidence that [Henderson] was involved as a principal in a major drug distribution conspiracy at the wholesale level"); Doc. 88 (Arbuckle, M.J., Mem. Op. Denying Henderson's Second Bail Motion) at 19 ("While I appreciate the efforts of Counsel to provide this additional detail [specific to the COVID-19 pandemic], my previous decision on this issue of detention is not changed by these new facts.").

[39]  *See* Doc. 126 (Brann, C.J., Order Denying Henderson's Third Bail Motion); Doc. 131 (Third Circuit Affirmation).

[40]  Doc. 245 (Henderson Br.) at 6.

[41]  *Id.*

[42]  *Id.*

As a preliminary matter, Henderson presented this same argument to Magistrate Judge Arbuckle in his fourth bail motion, and it was rejected.[43] Building on the Government's prior proffer "that Henderson is a high-level distributor of fentanyl," Magistrate Judge Arbuckle found that the evidence establishing that Henderson received and distributed hundreds of kilograms of fentanyl and fentanyl analogues since 2015 remains "strong."[44] Magistrate Judge Arbuckle highlighted "a video and audio recording of Henderson receiving 100 kilograms of a mixture or substance he believed contained carfentanil on June 15, 2019," as well as Henderson's "lavish lifestyle in spite of his modest"—"[o]n a salary of approximately $1,800 per month he was able to support a wife who does not work in a home valued at $175,000 that contained nearly a half-million dollars of cash, jewelry, and luxury vehicles at the time of his arrest."[45]

To be sure, Henderson contests Magistrate Judge Arbuckle's findings and the weight he attributed to them. Henderson asserts that "no seizure of any fentanyl, or for that matter any illegal drugs, were ever found on Mr. Henderson's person, residence, or any of his property," and that "[t]here was no evidence of money exchanged between Bressi and Henderson and no evidence of any drug

---

[43]  *See* Doc. 238 (Arbuckle, M.J., Mem. Op. Denying Henderson's Fourth Bail Motion) at 8 (rejecting Henderson's argument that "the Government's evidence against him is no longer as strong as it once was" because "the only purported source of the historical drug trafficking— Mr. Bressi—is no longer a cooperating witness").

[44]  *Id*. at 9.

[45]  *Id*.

transactions by Mr. Henderson to anyone else."[46] Whether true or not, these averments do not repudiate Magistrate Judge Arbuckle's findings regarding the June 2019 controlled delivery of what Henderson believed to be 100 kilograms of carfentanil.

Further, Henderson asserts that Magistrate Judge Arbuckle's conclusions connecting Henderson lavish lifestyle to drug trafficking constitute "pure supposition," as "the record is devoid of any evidence that any nefarious activities were the source of those items."[47] But Henderson has not offered any viable explanation for how he and his wife obtained nearly $400,000 in cash (which they deposited in various bank accounts) as well as $500,000 in additional money and luxury items (namely, jewelry and cars—six of them, in fact, including two Lincolns and a Mercedes) over a four-year period in which they earned a combined salary of between $23,000 and $50,000 a year.[48] Considered alongside the remaining evidence in this case, Henderson's financial holdings and personal expenses constitute "indicia of drug dealing"; Magistrate Judge Arbuckle's finding to that effect is not "pure supposition."[49]

Although recent developments in this case—most notably, Bressi's decision, after previously cooperating with the Government, to contest the charges against

---

[46]   Doc. 245 (Henderson Br.) at 6–7.
[47]   *Id*. at 7.
[48]   *See* Doc. 228 (Gov't Opp.) at 6–7. This range generously excludes 2017, when Ms. Coombs-Henderson did not report any income and Henderson reported only $1,462 in earnings. *Id*.
[49]   Doc. 245 (Henderson Br.) at 7.

him—alter the overall complexion of this matter, they do not indicate a "seismic plunge" in the strength of the Government's case against Henderson.[50] Far from it. As this Court's prior factual findings (which largely accord with those issued by Magistrate Judge Arbuckle) remain unchanged, the Court affirms its prior judgment: the case against Henderson is strong.

### 3.   Risk of Flight or Danger to the Community

Finally, courts considering the merits of Henderson's four bail motions have, time and again, concluded that he is a flight risk and danger to the community.[51] Nothing has happened in the intervening years to alter this finding.

This Court considers Magistrate Judge Arbuckle's analysis in his April 2020 Memorandum Opinion denying Henderson's second bail motion particularly persuasive. There, Magistrate Judge Arbuckle noted that the length of the sentence Henderson could face if convicted, explaining that the increased severity in possible sentence from his prior convictions makes him a flight risk: although Henderson's willingness to appear for trial and report on his prior cases arguably mitigates the risk of appearing at trial here, the relatively modest sentence meted out in the prior cases (less than three years of incarceration) stands in stark contrast

---

[50]   *Id*. at 6.
[51]   *See* Doc. 39 (Initial Order of Detention); Doc. 71 (Arbuckle, M.J., Mem. Op. Denying Henderson's First Bail Motion); Doc. 88 (Arbuckle, M.J., Mem. Op. Denying Henderson's Second Bail Motion); Doc. 126 (Brann, C.J., Order Denying Henderson's Third Bail Motion); Doc. 131 (Third Circuit Affirmation); Doc. 238 (Arbuckle, M.J., Mem. Op. Denying Henderson's Fourth Bail Motion).

to the potential sentence he currently faces (fifteen-year mandatory minimum prison sentence, with the possibility of life in prison).[52] Further, Magistrate Judge Arbuckle found that the nature of the offense—"conspiracy to distribute hundreds of kilograms of fentanyl and carfentanil in Pennsylvania and Ohio"—makes him a danger to the community.[53] Magistrate Judge Arbuckle emphasized the presumption of detention, which "reflects a congressional finding that drug trafficking is a danger to the community," and supporting statistics on drug overdose deaths in Pennsylvania.[54]

For his part, Henderson does not challenge either of these positions. Instead, Henderson seizes on a relatively minor factual finding that he believes Magistrate Judge Arbuckle made in error. Specifically, Henderson asserts that "contrary to the magistrate's findings, Mr. Henderson was not on supervision in the Northern District of Ohio while he was purportedly participating in this alleged conspiracy."[55] Be that as it may, it does not necessitate a different ruling on the question at hand. Regardless of Henderson's supervision status at the time of the alleged conspiracy, the nature of the offenses charged and the significant incarcerative sentences they carry make Henderson both a flight risk and a danger to the community.

---

[52]   Doc. 88 (Arbuckle, M.J., Mem. Op. Denying Henderson's Second Bail Motion) at 11–12.
[53]   *Id*. at 12.
[54]   *Id*.
[55]   Doc. 245 (Henderson Br.) at 5.

Accordingly, the developments over the past three-and-a-half years do not materially affect the factors underlying the initial detention ruling. These factors thus support continued detention.

## B.     Additional Factors

As discussed, the Third Circuit in *Accetturo* explained that for a due process challenge to continued pretrial detention, the district court must supplement its analysis of the factors relevant to the initial detention ruling with the consideration of the following additional factors: (1) the length of the pretrial detention that has already occurred; (2) the complexity of the case; and (3) whether either side has "added needlessly" to that complexity.[56] The Third Circuit instructed that "[i]n some cases, the evidence admitted at the initial detention hearing, evaluated against the background of the duration of pretrial incarceration and the causes of that duration, may no longer justify detention."[57] This is not one of those cases.

### 1.     Length of Pretrial Detention

As Magistrate Judge Arbuckle noted in his October 2022 Memorandum Opinion denying Henderson's fourth request for bail, it is undisputed that Henderson has been detained on the present charges since June 17, 2019.[58] Accordingly, as of this writing, Henderson has been detained pretrial for more than 45 months. This is, by any measure, a substantial period of detention prior to

---

[56]   783 F.2d at 388.
[57]   *Id.*
[58]   Doc. 238 (Arbuckle, M.J., Mem. Op. Denying Henderson's Fourth Bail Motion) at 10.

trial.[59] That said, the length of pretrial detention, while "a factor in determining whether due process has been violated," is not alone dispositive and "will rarely by itself offend due process."[60] This factor thus weighs heavily in favor of Henderson's argument that his due process rights have been violated, but it does not supersede all other factors relevant to the detention determination.

### 2.     Complexity of the Case

The second additional *Accetturo* factor concerns the complexity of the case at hand.[61] Courts' application of this factor has been, to put it mildly, inconsistent. Certain courts have deemed the relative complexity of a case a factor weighing in favor of release—the more complex the case, the logic goes, the more important it is for the defendant to get "regular access to his counsel and to the evidence," to ensure that he can "prepare a defense in time for trial."[62] Unsurprisingly, Henderson endorses this approach.[63] Other courts have held that the complexity of the case militates against a finding of a due process violation, as more complex

---

[59]   *See United States v. Torres*, 995 F.3d 695, 709 (9th Cir. 2021) (finding that although the defendant's 21-month detention "does not yet violate due process," it is "significant under any metric" and "deeply troubling"; it is "approaching the limits of what due process can tolerate").

[60]   *United States v. El-Hage*, 213 F.3d 74, 79 (2d Cir. 2000) (internal quotation marks and citations omitted).

[61]   783 F.2d at 388.

[62]   *United States v. Nikparvar-Fard*, 2022 WL 2974715, at *3 (E.D. Pa. July 26, 2022).

[63]   *See* Doc. 245 (Henderson Br.) at 9 (arguing that Henderson's "continued incarceration has compromised his legal defense as [he] is unable to assist in the investigation and preparation of his case in a meaningful way").

cases "reasonably require a lengthy period for pretrial preparation."[64] As expected, the Government favors this interpretation.[65]

On this, the Court agrees with the Government. The question here is whether the length of pretrial detention served to date requires, as a matter of due process, a release pending trial.[66] Put differently, when considering a defendant's motion for pretrial release, a district court must determine whether the extended period of pretrial detention is both warranted and excusable. As this Court sees it, the Third Circuit's reference in *Accetturo* to a case's "complexity" concerns the latter consideration: because more complex cases necessarily require more extensive trial preparation, the more complex the case the less likely a prolonged period of pretrial detention is to offend due process.

Here, the complexity of the case is beyond dispute. The Government has alleged a multi-defendant criminal conspiracy spanning several years and extending into multiple federal jurisdictions. As the Government asserts,

> the case involves the seizure of one of the largest domestic fentanyl laboratories in recent memory and the recovery of hazardous precursor materials. The capabilities of the lab and those associated with it to produce fentanyl analogues requires expert testimony and separates this from a less-complex drug case. This case also involves millions of dollars of money laundering of drug proceeds

---

[64] *United States v. El-Gabrowny*, 35 F.3d 63, 65 (2d Cir. 1994); *see also El-Hage*, 213 F.3d at 80 ("Everyone involved agrees that the underlying case is of exceptional complexity and that discovery and trial preparation are of necessity extremely time-consuming for both sides.").

[65] *See* Doc. 228 (Gov't Opp.) at 12–13 (citing the "factual and legal complexities" of the case as a justification for the extended pretrial detention).

[66] *Accetturo*, 783 F.2d at 388.

> . . . [and] also includes the analysis of telephone toll
> records, surveillance, geolocation tracking of phones, and
> the controlled delivery of products by the Government to
> [D]efendants Henderson and Harris by Bressi.[67]

Given this complexity, it is only reasonable to expect a lengthy period of pretrial preparation as well as pretrial motions practice. Accordingly, this factor does not weigh in Henderson's favor; it instead supports continued detention.

### 3.    Adding "Needlessly" to the Complexity

The final factor concerns the responsibility for any added complexity.[68] As the Third Circuit framed it in *Accetturo*, the question is not simply whether either party contributed to the complexity of the case; rather, this factor concerns actions by either party that "needlessly" complicated the case through its litigation strategy.[69] To that end, courts typically analyze whether the Government contributed to the length of the defendant's pretrial detention through improper, unjustifiable delay in producing materials in discovery.[70]

Henderson argues that Magistrate Judge Arbuckle, in denying his fourth bail motion, erroneously determined that "the delay was not caused by the Government" because "the Government *was* responsible for the early part of this

---

[67]   Doc. 228 (Gov't Opp.) at 12–13.
[68]   *Accetturo*, 783 F.2d at 388.
[69]   *Id*.
[70]   *See*, *e.g.*, *Nikparvar-Fard*, 2022 WL 2974715 at *3 ("The Government's late production of 70,000 pages and 60 hours of surveillance footage less than a month before the previously schedule trial date . . . contributed needlessly and problematically to the complexity of the matter and resulted in yet another seven-month delay of the multi-defendant trial.").

delay by providing massive dumps of discovery in piecemeal fashion."[71] Henderson asserts that "multiple and voluminous discovery discs were provided over an *eighteen*-month period" between August 12, 2019, and February 19, 2021.[72] The Court finds this unpersuasive.

First, the volume and method of discovery is not, by itself, indicative of a vexatious strategy to needlessly delay trial. Rather, as the Government asserts, "it is a fulsome production of the Government's case file, well in advance of trial, that reflects a lengthy investigation that spanned over a year and included defendants in three federal districts."[73] Per the Supreme Court of the United States' ruling in *Brady v. Maryland*, Henderson is entitled to this discovery and thus the Government is obligated to produce it.[74]

Second, by Henderson's own admission, the Government made its final production in February 2021—more than two years ago.[75] At the time of this last production, Henderson had been detained pretrial for approximately twenty months; as discussed, Henderson has now been in custody for 45 months. This begs the question of who bears responsibility for the delay these past 25 months.

---

[71] Doc. 245 (Henderson Br.) at 8.
[72] *Id*. at 8–9.
[73] Doc. 228 (Gov't Opp.) at 11–12.
[74] 373 U.S. 83 (1963).
[75] Doc. 245 (Henderson Br.) at 8–9.

The answer, it seems, is the Defendants. Since February 2021, the Defendants have sought (and received) four separate continuances.[76] Further, the Defendants have filed eleven different pretrial motions: eight motions to suppress, two motions to sever, and a motion to compel.[77] For those motions, the Defendants requested an evidentiary hearing, which this Court held on November 15 and 16, 2022.[78] And then, at the Defendants' request, this Court granted the Defendants leave to file supplemental briefs in support of their various pretrial motions.[79]

To be clear, the Court does not begrudge the Defendants' efforts to challenge the admissibility of certain evidence. Because they pleaded not guilty, they can and should mount a vigorous defense. But having done so, they cannot now cry foul for the delay caused by their pretrial litigation tactics. The delay is by no means needless. It is also by no means attributable to the Government. Accordingly, this factor weighs against Henderson's argument that his due process rights were violated.

---

[76]   *See* Doc. 133 (Feb. 8, 2021, Order to Continue); Doc. 146 (June 9, 2021, Order to Continue); Doc. 157 (Dec. 1, 2021, Order to Continue); Doc. 222 (Aug. 10, 2022, Order to Continue).

[77]   Doc. 150 (Bressi Mot. to Preclude Statements); Doc. 158 (Harris Mot. to Sever); Doc. 160 (Harris Mot. to Preclude Co-Conspirator Statements); Doc. 162 (Harris Mot. to Preclude Tape Recordings and Transcripts); Doc. 166 (Henderson Mot. to Suppress Prison Calls); Doc. 168 (Henderson Mot. to Suppress Physical Evid.); Doc. 170 (Henderson Mot. to Compel); Doc. 172 (Henderson Mot. to Sever); Doc. 186 (Bressi Mot. to Preclude Traffic Stop Evid.); Doc. 188 (Bressi Mot. to Suppress Trash Pull Evid.); Doc. 190 (Bressi Omnibus Mot.).

[78]   *See* Doc. 258 (Nov. 15, 2022, Hearing Tr.); Doc. 259 (Nov. 16, 2022, Hearing Tr.).

[79]   Doc. 261 (Supplemental Briefing Order).

## IV.  CONCLUSION

Although Henderson has been detained without trial for a substantial period, that delay does not, by itself, necessitate release. Instead, the Court must weigh this delay against all other factors relevant to the detention determination. The Court has done so and concludes that continued detention is warranted. Henderson's motion appealing Magistrate Judge Arbuckle's denial of his fourth bail motion is denied.

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge